869 F.2d 593
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Shirley M. HEANEY; John Heaney, Plaintiffs-Appellants,
v.
KINNEY SHOE CORPORATION, a New York corporation, Defendant-Appellee.
 No. 88-3560.
 United States Court of Appeals, Fourth Circuit.
 Argued: Dec. 7, 1988.
Decided: Feb. 15, 1989.
 
 Mark Davis Moreland (George C. Joseph, Monty L. Preiser, Preiser Law Offices, on brief), for appellants.
 Charles F. Printz, Jr. (Joan L. Casale, Richard Lee Douglas, Rice, Douglas & Shingleton, on brief), for appellee.
 Before JAMES DICKSON PHILLIPS, SPROUSE and WILKINSON, Circuit Judges.
 PER CURIAM:
 
 
 1
 Shirley M. Heaney and John Heaney appeal from a summary judgment granted to Kinney Shoe Corporation in their action for injuries allegedly suffered by Shirley Heaney while employed by Kinney. Kinney was a subscriber to the West Virginia Workers' Compensation Fund at the time of the claimed injury, but Heaney contends that the corporation had lost its immunity from common law actions for employment-related injuries because it owed penalty interest to the Fund for a delay in making a single premium payment which had occurred two years prior to the accident. The Heaneys also assert that the corporation was liable in its "dual capacity" as a manufacturer, apart from its status as an employer, because it built the machine upon which Heaney was working at the time of her alleged injury. Finding no merit to either of these contentions, we affirm.
 
 
 2
 Kinney constructed the conveyor which Heaney claims caused her injury solely for its own use and has never sought to sell the conveyor or any similar equipment. Heaney had worked at the Kinney plant for eleven years, eight of which were spent working at a console on the conveyor. In her complaint, she contends that, although she did not see it, her pants leg was caught in a rotating pulley shaft and this malfunction caused her to fall to the floor, injuring her back. There were no witnesses to the accident. Since the district court decided the case on summary judgment, we, like the district court, do not reach the factual merits of her claim.
 
 
 3
 Heaney was injured on April 9, 1984. She and her husband filed this action on April 8, 1985. Kinney answered, among other things, that it was immunized from the action by the immunization provisions of the West Virginia Workers' Compensation Act. The Heaneys contend, however, that the corporation lost its immunity by virtue of its default in paying interest on a delayed premium payment. Both parties base their contentions on undisputed facts.
 
 
 4
 During the relevant period, Kinney employed an independent consultant who monitored its considerable quarterly returns with the Fund. The quarterly return due on January 31, 1982 was filed late, on March 8, 1982. Moreover, the premium amount paid for this quarter was erroneously calculated to be $7,000 short of what was actually due. Kinney noticed this error and corrected it with an appropriate payment some eight months later. At all times prior to and after this incident Kinney correctly maintained its premium balance.
 
 
 5
 On March 29, 1985, over three years after the thirty-six-day delay in Kinney's 1982 report and almost two-and-a-half years after it had voluntarily noticed and corrected the premium underpayment, an employee of the Fund orally notified the corporation that it had not paid penalty interest on the delayed payment and that there was interest due in the amount of $1,809.30. This penalty interest was calculated solely for the period from March 1982 to November 1982. Fred Dillon, the Director of the Fund's Accounting Division, testified in a deposition that the lateness of the interest penalty calculation was due to the number of accounts in his department and to the manual nature of auditing. He stated, "We took the position that we were not going to penalize an employer for delays in administration by the Fund. That is, if it took two years to do an assessment, we are not going to charge another two years of interest simply because of our own inability to make a determination of the amount due...." Dillon also testified that Kinney had not been given any notice of the interest penalty until March 1985 and that Kinney paid the interest penalty one month after it was notified by the Fund.
 
 
 6
 Under the West Virginia Workers' Compensation statute, any employer who fails to file payroll records or to pay premiums on time is delinquent. W.Va.Code Sec. 23-2-5 (1974).* The statute, of course, has the usual provisions immunizing employers from common law actions brought by employees for employment-related injuries. Section 23-2-6 provides in relevant part:
 
 
 7
 Any employer subject to this chapter who shall subscribe and pay into the workmen's compensation fund the premiums provided by this chapter or who shall elect to make direct payments of compensation as herein provided, shall not be liable to respond in damages at common law or by statute for the injury or death of any employee, however occurring, after so subscribing or electing, and during any period in which such employer shall not be in default in the payment of such premiums or direct payments and shall have complied fully with all other provisions of this chapter.
 
 
 8
 Section 23-2-5 (1974), the statute in effect at the time of the delayed payment, provided in part:
 
 
 9
 Provided, however, that any employer required by this chapter to subscribe and pay premiums to the workmen's compensation fund, or to make quarterly payroll reports required by the commissioner, as herein provided, and who fails to comply with such requirements, shall be deprived of the benefits and protection afforded by this chapter....
 
 
 10
 An employer required by this chapter to subscribe and pay premiums to the workmen's compensation fund, and to make the quarterly payroll reports required by the commissioner as herein provided, and who defaults or fails to comply with any of said requirements shall be restored to the benefits and protection of this chapter only upon the payment into the workmen's compensation fund of all unpaid premiums, penalties, and charges, provided herein....
 
 
 11
 The district court, in granting summary judgment, held that at the time of the accident Kinney was in substantial compliance with the requirements of Sec. 23-2-5 (1974) and was entitled to invoke the statutory immunity provided by Sec. 22-3-6. We agree and do not believe that the West Virginia Legislature intended to deprive an employer of its statutory immunity to a common law suit for an unpaid interest penalty which was not called to its attention until two years after it was incurred due to a quickly corrected clerical error. Kinney appears to have been an exemplary employer, at all times going to considerable effort and expense to maintain its account in good standing. It discovered the 1982 error by its own efforts and immediately corrected it. No interest penalty was paid at that time because Kinney had not been apprised of any penalty. Kinney thus had every reason to believe it was in good standing from November 1982 forward, based on the Fund's failure to notify it of any penalty. Two-and-a-half years later, the Fund orally advised Kinney of the interest penalty, and Kinney paid that penalty promptly. Heaney's accident occurred during the period between the payment of the full amount of the premium and the notice of the interest penalty. In our view, stripping Kinney of the normal advantages granted to it for paying its considerable premiums under the circumstances of this case would defeat the principal purposes of the Workers' Compensation Act.
 
 
 12
 We likewise find no merit to the Heaneys' "dual capacity" argument. Kinney was not a third-party manufacturer of the involved equipment but constructed it solely for its own use. The West Virginia Supreme Court has never considered the possible application of this doctrine. In our view, even if it were to adopt the doctrine generally, it should not be applied under the circumstances of this case. The judgment of the district court is affirmed.
 
 
 13
 AFFIRMED.
 
 
 
 *
 This section was amended in 1984, after the date of the involved delayed payment, to require the Commissioner to notify delinquent employers of any delinquency in filing premiums within sixty days of the end of each quarter. In view of our decision, it is not necessary to reach the question of whether that provision has retroactive application